IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 3:15-76 |
| | ) | Judge Kim R. Gibson |
| KNISELY & SONS, INC., *et al.*, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**I. Introduction**

This matter comes before the Court upon a Motion for Summary Judgment filed by Plaintiff ACUITY, A Mutual Insurance Company ("Acuity") (ECF No. 17) pursuant to Federal Rule of Civil Procedure 56. Defendant Knisely & Sons, Inc. ("Knisely") has filed a response in opposition to Acuity's Rule 56 Motion (ECF No. 20) and Acuity has filed a reply (ECF No. 24). For the reasons that follow, Acuity's Motion for Summary Judgment will be **GRANTED**.

**II. Jurisdiction and Venue**

The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201 et seq. Venue is proper under 28 U.S.C. § 1391.

**III. Background**

In this declaratory judgment action, Acuity seeks a determination as to its rights and obligations pursuant to a Commercial General Liability Insurance Policy (Policy No. X02492) issued by Acuity to Knisely. (ECF No. 19 ¶¶ 6-7.) The critical question for the Court's

determination concerns Acuity's obligations to defend and/or indemnify Knisely in a state court action filed on July 2, 2014, by the Municipal Authority of the Borough of Bedford ("Bedford"). (*Id.* ¶¶ 10-11.)

By way of background, Bedford entered into a construction contract in 2009 with a company called Howard Robson, Inc. ("Robson"). (ECF No. 1-3 ¶ 4.) Among other things, Robson installed a boiler in Bedford's wastewater treatment plant. (*Id.* ¶ 27.) Bedford immediately complained that the boiler did not function properly and could not reliably maintain the rated BTU output called for in the construction documents. (*Id.*) At some point, Bedford engaged Knisely to service the boiler in an attempt to improve its function. (ECF No. 17-4 ¶ 32.) When this failed, Bedford initiated the underlying action against Robson in the Bedford County Court of Common Pleas. (ECF No. 19 ¶ 10.) Robson (and Robson's insurance carrier) responded by filing a Joinder Complaint against Knisely and several other companies who performed work on the boiler. (*Id.* ¶ 11.)

With respect to Knisely, the most recent pleading in the Bedford County action – the Fifth Amended Joinder Complaint – contains two separate claims. (ECF No. 17-4 ¶¶30-41.) In pertinent part, Count III alleges:

> 33. [T]here is and can be no dispute that Knisely owed a contractual obligation and responsibility directly to [Bedford] to perform its work in a good and workmanlike manner.
>
> 34. If there is a finding that the Boiler is or continues to operate contrary to [Bedford's] desires or otherwise in an improper, defective, deficient or unworkmanlike manner, then Knisely is solely liable to [Bedford] on such claims for breach of Knisely's contractual obligation to [Bedford] to perform the work [Bedford] hired Knisely to perform in a good and workmanlike manner.

(*Id.* ¶¶ 33-34.) Count IV alleges:

> 37. Knisely owed Robson a duty to do no damage to the Boiler which was installed by Robson and its subcontractors on the Project.
>
> 38. If there is a finding that the Boiler is and continues to operate contrary to [Bedford's] desires or otherwise in an improper, defective, deficient or unworkmanlike manner, then such results from the careless and negligent acts and omissions of Knisely when it performed work on the Boiler at the Request of [Bedford].
>
> 39. If there is a finding that [Bedford] suffered damages as a result of the boiler installed on the Project, then such damages were caused by the active and primary negligent acts and omissions of Knisely in damaging the Boiler and/or its component parts.

(*Id.* ¶¶ 37-39.)

### IV. Standard of Review

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*; *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n. 11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position – there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

**V.     Discussion**

In its Motion, Acuity asks this Court to declare that it has no duty to defend or indemnify Knisely with regard to the underlying state court action. Specifically, Acuity contends that coverage under the pertinent policy is not triggered because: (1) the Fifth Amended Joinder Complaint does not allege an "occurrence" as defined in the policy; (2) the Fifth Amended Joinder Complaint does not allege "property damage"; (3) coverage is precluded by the policy's Contractual Liability Exclusion;[1] and (4) coverage is precluded by the policy's Impaired Property/Property Not Physically Injured Exclusion. Because Acuity's first contention is dispositive, it is unnecessary for the Court to discuss Acuity's remaining arguments.

When considering whether a duty to defend exists, the Third Circuit has stated:

> Under Pennsylvania law, an insurer has a duty to defend if the complaint filed by the injured party potentially comes within the policy's coverage.

---

[1] Knisely concedes that the Contractual Liability Exclusion bars coverage for the breach of contract claim set forth in Count 3 of the Fifth Amended Joinder Complaint. (ECF No. 20 at 9-10.)

> The duty to defend is a distinct obligation, different from and broader than the duty to indemnify. Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend. After determining the scope of coverage under a policy, the court must examine the complaint in the underlying action to determine whether it triggers coverage. If the complaint avers facts that might support recovery under the policy, coverage is triggered and the insurer has a duty to defend. Both the duty to defend and the duty to indemnify "flow from a determination that the complaint triggers coverage."

*Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225–26 (3d Cir. 2005) (internal citations omitted); *see also Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 896 (Pa. 2006) (Pennsylvania law provides that "[a] carrier's duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage."). Furthermore, "Pennsylvania's courts have taken a relatively broad view in discerning whether a complaint triggers an insurer's duty to defend." *Berg Chilling Sys., Inc. v. Vicarb, Inc.*, 70 F. App'x 620, 624 (3d Cir. 2003). The Third Circuit has also explained that "[t]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. That expectation is governed by the unambiguous language of the insurance policy." *Essex Ins. Co. v. Starlight Mgmt. Co.*, 198 F. App'x 179, 183 (3d Cir. 2006) (internal citations and quotation marks omitted).

Where coverage or an insurer's duty to defend is at issue, the insured has the initial burden of establishing coverage under the policy. Courts evaluate such claims by accepting the factual allegations of the underlying complaint as true and liberally construing those claims in favor of the insured. *Berg Chilling Sys.*, Inc. 70 F. App'x at 624. Where the insurance company relies on an exclusion clause to deny coverage, the insurer bears the burden of proving that the exclusion applies. *See State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d

Cir.2009). Such exclusions are strictly construed against the insurer and in favor of the insured. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206–07 (3d Cir. 2001).

The critical inquiry in the instant case turns on whether the boiler repair services performed by Knisely amount to an "occurrence" within the meaning of the insurance policy. Coverage under the policy is only triggered if bodily injury or property damage "is caused by an occurrence that takes place in the coverage territory." (ECF No. 17-2 at 6.) The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id*. at 32.)

As noted by Acuity, the Pennsylvania Supreme Court interpreted an insurance policy in *Kvaerner* that contained the same definition of occurrence as the policy at issue here. In *Kvaerner*, a coke battery builder insured under an occurrence-based liability contract was sued in an underlying action for failing to design and construct a battery according to applicable specifications, warranties, and industry standards. *Kvaerner*, 908 A.2d at 891. The insurance policy in *Kvaerner* provided coverage for "bodily injury" and "property damage" caused by an "occurrence" within the "coverage territory." *Id*. at 897. As in the instant case, the policy defined an occurrence as "an accident, including continuous or repeated exposure to substantially the same or generally harmful conditions." *Id*. The insurer argued that coverage was not triggered because the allegations against Kvaerner did not amount to an occurrence within the meaning of the policy.

The court began its analysis by observing that the critical component of an "accident" is that it is "unexpected," such as when a product actively malfunctions and causes damage. *Id*. at 898 (citing *Snyder Heating v. Penn. Manufacturers' Ass'n Ins. Co*., 715 A.2d 483, 485-86 (Pa. Super. 1998) (noting that the term "accident" implies an active malfunction, rather than poor

6

workmanship)). The court construed the underlying claims for breach of contract and breach of warranty as claims based on faulty workmanship, rather than an active malfunction, and concluded that coverage was not triggered under the policy because faulty workmanship claims "[do] not constitute an 'accident' as required to set forth an occurrence." *Id*. at 898-900. The court reasoned that claims based on faulty workmanship "do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction in this context." *Id*. "To hold otherwise," noted the court, would be "to convert a policy for insurance into a performance bond," which the court was "unwilling to do . . . since such protections are already readily available for the protection of contractors." *Id*. at 898 (footnote omitted).

The Third Circuit adopted this reasoning when called upon to interpret a similar insurance policy in *Nationwide Mutual Ins. Co. v. CPB Int'l, Inc*., 562 F.3d 591, 596-97 (3d Cir. 2009). In *Nationwide*, the insured, a wholesale supplier dealing in nutritional supplements, had been sued for supplying a deficient shipment of a substance known as chondroitin. *Id*. at 594. Citing *Kvaerner*, the Court noted that the faulty workmanship alleged in the underlying complaint – specifically, a failure to utilize proper quality control in evaluating the composition of the chondroitin – was not, as a matter of law, the type of "accident" that triggered coverage pursuant to an occurrence-based policy. *Id*. at 596 (citing *Kvaerner*, 908 A.2d at 899). Other Pennsylvania law courts have consistently reached the same conclusion. *See, e.g., Miller Capital Ins. Co. v. Gambone Bros. Development Co., Inc*., 941 A.2d 706 (Pa. Super. 2007) (denying coverage for claim that subcontractors' faulty workmanship in the course of installing windows and a stucco exterior for a housing development had resulted in water damage); *Erie Ins. Exchange v. Abbott Furnace Co*., 972 A.2d 1232 (Pa. Super. 2009) (faulty workmanship in the design and installation of an annealing furnace was not an occurrence); *Roman Mosaic and Tile*

7

*Co. v. Liberty Mut. Ins. Co.*, 2012 WL 1138587 (E.D. Pa. Apr. 5, 2012) (faulty workmanship in the course of installing bathroom drains for a condominium complex was not an occurrence).

As in each of the foregoing cases, the claims against Knisely in the Fifth Amended Joinder Complaint arise entirely from allegations of faulty or deficient workmanship in the course of attempting to service or repair the Bedford boiler. Count III alleges that Knisely "failed to perform the work . . . in a good and workmanlike manner," resulting in the boiler's failure to function as expected. (ECF No. 17-4 ¶ 35.) Count IV alleges that the boiler operates in an "improper, defective, deficient or unworkmanlike manner" due to "careless and negligent acts and omissions" committed by Knisely in the course of servicing the boiler. (*Id.* ¶ 38.) Nothing in the underlying pleading suggests that the boiler's failure to perform was the result of an accident, active malfunction, or other fortuitous event. As such, the allegations in the Fifth Amended Joinder Complaint do not, as a matter of law, establish an occurrence under *Kvaerner* and its progeny. *Kvaerner*, 908 A.2d at 898, 900 ("[F]aulty workmanship does not constitute an 'accident' as required to set forth an occurrence" because "the ordinary definition of 'accident' . . . implies a degree of fortuity that is not present in a claim for faulty workmanship."); *Nationwide*, 562 F.3d at 596 (claims based on faulty workmanship do not fall within the ordinary definition of accident).

Seeking a different result, Knisely relies heavily on the Pennsylvania Superior Court's decision in *Indalex Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 83 A.3d 418 (Pa. Super. 2013). In *Indalex*, several homeowners filed suit against a window manufacturer alleging that certain windows and doors installed in their homes were negligently designed and manufactured, resulting in water leakage, physical damage, and personal injury. *Id.* at 420. Indalex's insurer denied coverage on the basis that the allegations in the underlying action did

not amount to an occurrence as required by the policy. *Id*. The court disagreed, observing that, unlike in *Kvaerner*, the damage in *Indalex* was the result of an "off-the-shelf product that failed and allegedly caused property damage and personal injury." *Id*. at 424. The court carefully distinguished this type of situation, where a bad product causes an "active malfunction," from the type of faulty workmanship alleged in *Kvaerner* and its progeny. *Id*. ("Here, there are issues framed in terms of a bad product, which can be construed as an 'active malfunction,' and not merely bad workmanship."). The court also emphasized that, unlike in *Kvaerner*, the damage in *Indalex* extended beyond the work product itself. *Id*. at 425 ("[B]ecause Appellants set forth tort claims based on damages to persons or property, *other than the insured's product*, we cannot conclude that the claims are outside the scope of the coverage.") (emphasis added).

As discussed above, neither of these critical factors is present in the instant case. The underlying action does not involve a bad product designed by Knisely, but rather, poor workmanship in the course of attempting to remedy the deficiencies in an existing product. *See Hagel v. Falcone*, 2014 WL 8331846, at *12 (Pa. Super. Dec. 23, 2014) (holding that an occurrence-based policy is not triggered "where workmanship is at issue, [as opposed to] an active malfunction or product liability"); *Peerless Ins. Co. v. Manown Builders*, 2016 WL 3551726, at * (W.D. Pa. Jun. 30, 2016) (reiterating that claims based on poor workmanship do not, as a matter of law, trigger an occurrence). Nor is there any suggestion that Knisely's faulty workmanship caused damage to any person or property aside from the boiler itself. *Hagel*, 2014 WL 8331846, at *12 (noting that "the most critical element in *Indalex* was that the appellant's claims were product-liability/tort claims 'based on damages to persons or property, other than the insured's product.'"); *Indalex*, 83 A.3d at 424 n. 2 (noting that "general liability policies are intended to provide coverage if the insured's product actively malfunctions, causing personal

9

injury or damages to another's property.") (citing *Ryan Homes v. Home Indem. Co.*, 647 A.2d 939, 942 (Pa. Super. 1994)). Indeed, the Pennsylvania Supreme Court emphasized this precise distinction in *Kvaerner*:

> The risk intended to be insured [by commercial general liability policies] is the possibility that the goods, products or work of the insured, once relinquished and completed, will cause bodily injury or damage to property other than to the completed work itself and for which the insured [may] be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient work or product. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Kvaerer*, 908 A.2d at 899 n. 10 (quoting Insurance Protection for Products Liability and Completed Operations; What Every Lawyer Should Know, 50 Neb. L. Rev. 415, 441 (1971)).

In light of the foregoing, the Court concludes that *Kvaerner*, rather than *Indalex*, governs the resolution of this action. The claims in the Fifth Amended Joinder Complaint are unequivocally based on faulty workmanship. *Kvaerner* and its progeny dictate that such claims do not constitute an occurrence as required to trigger an occurrence-based insurance policy. *See*, *e.g.*, *Nationwide*, 562 F.3d at 597 (citing *Kvaerner* as foreclosing the possibility of an occurrence where the underlying allegations arise from faulty workmanship). Consequently, the policy does not provide coverage for Knisely, and Acuity has no duty to defend or indemnify Knisely in the underlying action.

## V. Conclusion

For the reasons set forth above, Acuity's Motion for Summary Judgment (ECF No. 17) is GRANTED. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ACUITY, A MUTUAL INSURANCE COMPANY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 3:15-76 |
| | ) | Judge Kim R. Gibson |
| KNISELY & SONS, INC., *et al.*, | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 9th day of August, 2016, this matter coming before the Court on Plaintiff's Motion for Summary Judgment (ECF No. 17), in accordance with the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED** that Plaintiff's Motion is **GRANTED**, and the Court **DECREES** as follows: there is no coverage under the Acuity Policy with respect to the allegations raised against Knisely in the Fifth Amended Joinder Complaint; Plaintiff Acuity has no duty to defend or indemnify Knisely, or any other party, against whom claims have been raised with respect to the Bedford County litigation; and counsel for Knisely, whom Acuity had assigned under and pursuant to a full and complete Reservation of Rights, is permitted to withdraw his appearance in the Bedford County litigation.

BY THE COURT:

Kim R. Gibson
United States District Judge